IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MELANIE LYNN RICE, )<br>)<br>                 **Plaintiff,** )<br>)<br>v.                                 )<br>)<br>CAROLYN W. COLVIN,       )<br>**Commissioner of Social Security,** )<br>)<br>                 **Defendant.** ) | Civil Action No. 6:13-CV-38 |

## REPORT AND RECOMMENDATION

Plaintiff Melanie Lynn Rice ("Rice") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Rice alleges that the Administrative Law Judge ("ALJ") erred by failing to give greater weight to the opinion of her treating physician, and by improperly discrediting her testimony about the severity of her symptoms. I conclude that substantial evidence supports the Commissioner's decision on both grounds. Accordingly, I **RECOMMEND DENYING** Rice's Motion for Summary Judgment (Dkt. No. 15), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 17.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Rice failed to demonstrate that she was disabled

1

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Rice protectively filed for SSI and DIB on September 20, 2010, claiming that her disability began on August 8, 2010, the date she was in a serious car accident.[2] R. 86. The Commissioner denied Rice's application at the initial and reconsideration levels of administrative review. R. 86–105, 106–127. On May 18, 2012, ALJ Jeffrey J. Schuler held a hearing to consider Rice's disability claim. R. 30–72. Rice was represented by an attorney at the hearing, which included testimony from Rice and vocational expert Mark A. Hileman. R. 30–72.

On June 29, 2012, the ALJ entered his decision analyzing Rice's claim under the familiar five-step process,[3] and denying Rice's claim for benefits. R. 12–23. The ALJ found that Rice's

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Rice's date last insured is March 31, 2015. R. 15. Therefore, she must show that her disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of

2

residual injuries from a motor vehicle accident constituted severe impairments; including multiple fractures of the ribs and pelvis, removal of the spleen, and numbness of the face and tongue. R. 17. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18. The ALJ further found that Rice retained the RFC to perform light work, but is limited to occasional operation of foot controls with her left lower extremity; and occasional balancing, stopping, kneeling, crouching, crawling, and climbing ramps or stairs. The ALJ restricted Rice from climbing ladders, ropes or scaffolds; as well as exposure to hazards or concentrated exposure to noise or vibration. The ALJ also found that Rice incapable of jobs that require more than frequent rotation of the neck or more than frequent peripheral acuity (to preclude positional vertigo). R. 19. The ALJ determined that Rice could return to her past relevant work as a receptionist, appointment clerk, data entry clerk, and loan clerk. R. 22. Thus, the ALJ concluded that she was not disabled. R. 23. Rice appealed the ALJ's decision to the Appeals Council, and filed additional medical evidence for review. R. 1–4, 332–33, 1285–12399. On May 13, 2013, the Appeals Council denied Rice's request for review (R. 1–5), and this appeal followed.

## ANALYSIS

Rice asserts that the ALJ erred in two respects. First, Rice argues that the ALJ erred by giving no weight to Rice's treating orthopedist's opinion that she would be absent from work more than three times a month. Second, Rice argues that the ALJ improperly discredited her statements of disabling symptoms. I find that substantial evidence supports the ALJ's decision on each ground, and recommend affirming the decision of the Commissioner.

---

proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## Treating Physician

On April 30, 2012, Rice's treating physician, Thomas Schuler, M.D., completed a Medical Source Statement, in which he found that Rice can occasionally lift 20 pounds; frequently lift 10 pounds; sit, stand or walk for 8 hours in an 8 hour workday; has a limited capacity for pushing and pulling with her lower extremities; cannot climb; should avoid hazards; and is limited to occasional balancing, kneeling, crouching, crawling, and stooping. R. 1264–65. Dr. Schuler also found that Rice would be absent from work more than three times per month, due to her impairments and/or treatment. R. 1267. The ALJ considered Dr. Schuler's opinion, and accorded "great weight to the specific functional limitations," but "no weight to the opinion by Dr. Schuler concerning [Rice's] expected absences from work because the frequency indicated is not supported by the objective medical evidence of record." R. 22. Rice argues that the ALJ's decision to give no weight to Dr. Schuler's opinion regarding her expected absenteeism is erroneous and not supported by substantial evidence.

The social security regulations require that an ALJ give the opinion of a treating physician source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781, at *2 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4)

4

the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citations omitted).

Here, the ALJ considered all of Rice's relevant medical evidence in accordance with the regulations, and determined the appropriate weight to give each medical opinion. R. 19–22. The ALJ found that Dr. Schuler's opinion was generally supported by the record as a whole, aside from his finding that Rice would be absent from work more than three times per month. R. 22. The ALJ gave no weight to the absenteeism portion of Dr. Schuler's opinion, which he found to be inconsistent with other substantial evidence in the record. R. 22. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision not to adopt Dr. Schuler's opinion that Rice would miss more than three days of work per month.

Rice was born on August 27, 1967, has a GED and completed some college coursework. R. 46, 86. Rice previously worked as a receptionist (semiskilled, sedentary work), appointment clerk (semiskilled, sedentary work), data entry clerk (semiskilled, sedentary work), and, loan clerk (semiskilled, light work). R. 64, 270, 281.

Rice's impairments relevant to this case commenced on August 8, 2010, when she was involved in a severe automobile accident involving a drunk driver, which resulted in two fatalities. R. 410, 418. Rice was badly injured, suffering multiple fractured ribs, a pelvic fracture, pulmonary contusion, severe scalp laceration, concussion, liver laceration, spleen laceration, diaphragm rupture, acetabular fracture, closed sacral fracture, traumatic pneumothorax, respiratory failure, hyperglycemia, acute blood loss and thrombocytopenia. R. 410, 423–26, 428, 520. Rice underwent emergency medical care, including the removal of

her spleen, a tube thoracotomy, irrigation of her lungs, diaphragm repair, liver laceration repair, and closure of facial laceration. R. 411–467. Rice spent twenty days in the hospital, and was released on August 28, 2010. R. 410–11.

Upon release from the hospital, Rice was followed on an outpatient basis by physicians at Roanoke Orthopedic Bone and Joint Clinic. Rice's medical records reflect that her pelvic fracture healed adequately, and she progressed from no weight-bearing on her left leg to bearing weight with a walker, to ambulating independently. R. 861–72, 899–900. On November 3, 2010, Rice's doctor noted that she stopped using pain medication and chose to do self-exercises rather than physical therapy due to financial restrains. R. 912.

On October 19, 2010, state agency physician Michael J. Hartman, M.D., completed a physical residual functional capacity assessment of Rice and found that within 12 months from the date of the accident, Rice would be capable of light exertional work with occasional balancing, kneeling, crouching, crawling, stopping and climbing, and no concentrated exposure to hazards. R. 887–94.

Rice first treated with Dr. Schuler at Roanoke Orthopedic Bone and Joint Clinic on November 4, 2010. R. 903. Rice reported that she was doing well, with no major complaints, aside from some mild lower back pain. R. 903. Dr. Schuler stated that Rice's fractures were healing, and instructed her to advance to the next level of rehab. R. 903.

On March 3, 2011, Rice reported to her OB/GYN that she was pregnant, and her doctor noted that her pelvis was stable for delivery despite her previous injuries. R. 1008. Her records note that although Rice was recovering well, she was not yet cleared to return to work. R. 1008.

Rice returned to Dr. Schuler on March 15, 2011, complaining of weakness in her hip. R. 1038. Rice reported that she had not been doing a home exercise program, aside from some

6

walking. R. 1038. Dr. Schuler stated that Rice's pelvic fractures had healed and were stable, but she was weak with insufficient post-injury strength building. Dr. Schuler instructed Rice to begin formal physical therapy, and to return for a follow up after the birth of her child. R. 1039. On March 28, 2011, Rice was cleared to return to work once approved by her OB/GYN. R. 1051.

On April 5, 2011, state agency physician Richard Surrusco, M.D., reviewed Rice's records and agreed with Dr. Hartman's conclusion that within twelve months of the accident Rice would be capable of performing light work with some occasional postural maneuvers and no concentrated exposure to hazards. R. 111–13, 121–23.

On July 15, 2011, Rice visited Sarat Chandra Burri, M.D., with Blue Ridge Family Practice, complaining of pain in her head above her eye, and pain in a scar on her forehead. R. 930. She was instructed to take Tylenol as needed, due to her pregnancy. R. 930–33.

On September 6, 2011, Rice delivered her baby via cesarean section. R. 981–84. Post-pregnancy, Rice complained of pain in her left foot, which was diagnosed as a sprain (R. 1129–1131); as well as anxiety, depression, and pain in her head. R. 1131, 1137.

On November 14, 2011, Rice saw a physician's assistant at Roanoke Trauma, complaining of pain in her head and above her eyebrow. R. 1152–154. Rice was prescribed low-dose Valium for dizziness and Neurontin for nerve pain, and was referred for neuropsychological testing and pain management. R. 1154.

Rice met with neuropsychologist William R. Wellborn, III, M.D., for a neuropsychological evaluation on November 23, 2011, complaining of dizziness, memory problems and pain, specifically in the left frontal areas of her head. R. 924. Dr. Wellborn diagnosed post-concussive syndrome and unspecified adjustment disorder. R. 927. He referred

7

Rice to Ralph Brown, M.D., for treatment of her traumatic brain injury and for vestibular rehabilitation therapy.[4] R. 927.

Rice visited Dr. Brown on March 13, 2012, reporting headaches, pain in her face, fatigue, dizziness, and numbness and tingling in her legs bilaterally. R. 1220–225. Dr. Brown diagnosed a severe brain injury, fatigue, trigeminal nerve injury, radiculopathy at the left S1 level, vertigo and sleep disorder. Dr. Brown noted that vertigo was Rice's biggest problem, and prescribed medication for vertigo, insomnia and nerve pain. R. 1225.

Rice underwent additional neuropsychological evaluations with Dr .Wellborn in March and April 2012. R. 1279–283. On April 13, 2012, Dr. Wellborn concluded that Rice did not have any significant problems from a neuropsychological standpoint, and was able to return to work. R. 1283. Dr. Wellborn noted, however, that dizziness and vertigo could make Rice's return to work difficult. R. 1283. He discharged Rice from his care and recommended that she continue vestibular therapy. R. 1283.

Rice began vestibular rehabilitation therapy on April 3, 2012, complaining of vertigo and pain in her face, neck and back. R. 1209–215. On April 17, 2012, the physical therapist noted that Rice experienced a reduction in dizziness, but continued to require rehabilitation therapy. R. 1216.

On April 24, 2012, Rice met with Chheaney Walter Ung, M.D., for pain management. R. 1268–72. On examination, Dr. Ung noted pain upon palpitation radiating down the lateral aspect of Rice's legs, but normal strength and reflexes. He assessed chronic facial, pelvic, and low back pain; myofascial pain; and possible left supraorbital neuralgia. R. 1272. Dr. Ung recommended lumbar facet joint injections and increased Rice's medication. R. 1272.

---

[4] Vestibular rehabilitation therapy is an exercise-based program designed to promote central nervous system compensation for inner ear deficits. See http://vestibular.org/understanding-vestibular-disorder/treatment/treatment-detail-page

8

On April 30, 2012, Dr. Schuler completed his physical work-related activity form, as set forth above, finding that Rice would be absent from work at least three days per month. R. 1265–267. Dr. Schuler also noted in his opinion that Rice was not at her maximum medical improvement and needed to undergo further rehabilitation. R. 1267.

Rice submitted medical records dated May 9, 2012 through November 8, 2012 to the Appeals Council.[5] These records demonstrate that Rice continued to visit Dr. Brown and Dr. Ung during that time period, complaining of fatigue, dizziness, facial pain and back pain. R. 1295–1300, 1352–357, 1391–392. On May 17, 2012, Dr. Brown noted that Rice's biggest problem was dizziness and fatigue, which was partially due to waking up with her eight-month old son at night. R. 1295. Rice noted that physical therapy was helping with her dizziness, and that pain medication relieved her facial pain. R. 1295–96. Dr. Brown instructed Rice to continue participating in physical therapy and taking Antivert for vertigo. R. 1299.

On June 13, 2012, Rice followed up with Roanoke Orthopedic Bone and Joint Center, and reported that recent injections have largely improved her back pain. R. 1318. She stated that she can walk with no difficulty, and had full, active and pain free range of motion. R. 1318. She was instructed to continue advancing activities with common sense and safety with progressive motion therapies and strengthening. The doctor noted that Rice had no restrictions. R. 1319.

On August 20, 2012, a Family Nurse Practitioner with Dr. Brown's practice noted that Rice's main complaint was vertigo, which was much better with medicine. Rice reported that she was doing really well with physical therapy, but had not been in two weeks due to finances. R. 1353. Rice also reported that she was working as a cashier, which "has helped her a great

---

[5] When the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).

deal," and no longer felt tired or felt like a burden since starting her job. R. 1353. Rice also reported that she was living alone, and her "son helps with chores but she is able to do everything herself." R. 1383.

On November 8, 2012, Rice followed up with Dr. Ung, who assessed chronic pelvic pain, chronic low back pain, myofascial pain syndrome, chronic facial pain and possible left supraorbital neuralgia. R. 1392. Rice noted that left lumbar facet injections helped her back, although standing on a cement floor aggravates her back pain. R. 1392. Dr. Ung's physical exam of Rice demonstrated no acute distress, appropriate mood and affect, and a grossly intact neurological exam. R. 1392.

Having reviewed the considerable volume of medical records in this case, I find that substantial evidence supports the ALJ's decision not to adopt Dr. Schuler's conclusion that Rice would miss more than three days of work per month. Notably, Rice does not dispute any of the provisions of the RFC set forth by the ALJ in this case. Rice takes issue only with the ALJ's failure to adopt Dr. Schuler's opinion regarding absenteeism.

Dr. Schuler completed his medical source statement on April 30, 2012 over a year after his last examination of Rice. The one question at issue on the medical source statement form is phrased, "[o]n average, how often do you anticipate that your patient's impairments or treatment would cause your patient to be absent from work." R. 1267. Dr. Schuler checked the box stating "[m]ore than three times a month." R. 1267. Dr. Schuler provided no additional comments; thus, it is not clear whether Dr. Schuler's determination was based upon Rice's injuries or her need for treatment, or both. However, Dr. Schuler noted with regard to his recommended RFC restrictions that Rice "needs to rehab, not yet at [maximum medical improvement]." R. 1267.

10

Dr. Schuler treated Rice shortly after the accident for follow up of her pelvic fracture. R. 903, 1038. Dr. Schuler's last examination of Rice was in March 2011, seven months after the accident. At that time Dr. Schuler noted that although Rice was healing well, her pelvic region required additional rehabilitation, and recommended that she begin formal physical therapy for her hip, rather than a home exercise program. R. 1039. Dr. Schuler's opinion rendered over a year later was based solely upon his fairly limited treatment of Rice, and the records of her visits to Roanoke Orthopedic Bone and Joint Center prior to the date of his opinion. Conversely, the ALJ reviewed all of Rice's medical records, both before and after her treatment with Dr. Schuler, and found that, although the majority of Dr. Schuler's opinion was well-supported by the record, Dr. Schuler's opinion regarding absenteeism, was not supported by the objective medical evidence. R. 22.

The ALJ's decision is consistent with and supported by Rice's medical records. Shortly after Rice's last visit with Dr. Schuler, she was cleared to return to work as allowed by her OB/GYN. R. 1051. On April 13, 2012, Dr. Wellborn noted that Rice was able to return to work from a neuropsychological standpoint. R. 1283. By June 13, 2012, Rice reported that she can walk with no difficulty, and had full, active and pain free range of motion. R. 1318. Rice's treatment with Dr. Schuler was focused on her pelvic region; however, after Rice delivered her baby, her complaints shifted from her pelvic region to low back pain, vertigo, and pain in her face. R. 924, 1152, 1220. Rice's back pain was eventually alleviated by facet injections, and her vertigo and facial pain responded well to vestibular rehabilitation therapy and medication. R. 1216, 1295–96, 1318, 1353.

The ALJ's decision to reject the absenteeism portion of Dr. Schuler's opinion is also consistent with the other medical opinion evidence in the record. R. 111–13, 121–23, 888–94.

11

As the ALJ noted, no other physicians assessed Rice with limitations more restrictive than the RFC, or found that Rice would miss work on a regular basis. R. 21.

Rice argues that her physicians' recommendation that she undergo further rehabilitation and physical therapy supports Dr. Schuler's opinion that she would be absent from work more than three times per month. Rice's records reflect that her physicians encouraged her to attend physical therapy and vestibular rehabilitation therapy treatments. R. 903, 927, 1039, 1216, 1283. However, the records do not reflect that either Rice's pain complaints or her required therapy would prevent her from maintaining a regular work schedule. On April 3, 2012, a physical therapist recommended that Rice attend vestibular rehabilitation therapy once a week for twelve weeks. R. 1213. There is no indication that a once-a-week rehabilitation therapy session is work preclusive, and there are no other records to suggest that Rice was instructed to attend other therapy or treatment appointments with more frequency. Rather the record reflects that Rice was able to obtain a job as a cashier in August 2012, and reported that it "helped her a great deal." R. 1353.

Dr. Schuler's opinion regarding absenteeism is also contradicted by Rice's post-accident activities of daily living. There is no question that Rice spent months recovering from the injuries she sustained in the accident. However, within a year after the accident, Rice became pregnant and gave birth to a baby, began taking online classes at a community college, and was able to drive a car, grocery shop, and perform household chores. R. 43–47. By August 2012, Rice was working as a cashier, and reported being able to care for herself, her home and her baby without help. R. 1353. Accordingly, there is substantial evidence in the record to support the ALJ's determination that Rice would not be absent from work more than three times a month due to her injuries or treatment.

**Credibility**

Rice argues that the ALJ improperly found that her testimony regarding the severity of her symptoms was not fully credible. At the administrative hearing, Rice alleged that she was unable to sit or stand more than fifteen minutes without changing positions, and must lie down several times a day for an hour at a time. R. 38–39. Rice claimed that she relies upon her neighbors and family members to help with sweeping, laundry, dishes, and taking care of her young baby. R. 39, 45–46, 60. Rice acknowledged that she is able to care for her eight month old child and drive her car approximately three times a week. R. 19–20.

The ALJ found that Rice's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent" with the RFC. R. 21. In his decision, the ALJ thoroughly considered the evidence of record and provided sufficient support for his determination of Rice's credibility. R. 19–22. The ALJ reasoned that, although Rice was involved in a horrific motor vehicle accident, she recovered the point that her residual limitations did not prevent her from attending college and delivering a baby by C-section. R. 21. The ALJ noted that Rice was able to perform household chores and act as the primary caregiver to her infant child. R. 21. The ALJ also found that the objective medical evidence did not support her testimony regarding the alleged severity of her symptoms. R. 21.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)

13

For the same reasons that the ALJ's decision with regard to the RFC was supported by substantial evidence, so too is the ALJ's decision to find Rice's testimony not fully credible. The evidence reflects that Rice is married, but her husband is incarcerated; and she lives with her sons, who are twenty and eight months old, respectively. R. 38–39, 44, 46. Rice reported that during the relevant period, she had the capacity to feed her pets, dress, bathe, attend to her personal hygiene, occasionally prepare frozen meals, drive short distances, shop for groceries, read, and do laundry. R. 260–63, 265–67. Rice returned to school within a year of the motor vehicle accident, taking hybrid classes online. R. 48. Notably, on August 20, 2012, Rice reported not only that she was working as a cashier, but further that she was able to handle her household chores by herself. R. 1383.

"If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination." Spencer v. Barnhart, Civ. A. 706CV00420, 2007 WL 1202865, at *1 (W.D. Va. Apr. 20, 2007) (citing Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). Here the ALJ's decision identifies the evidence forming the basis of his credibility determination, and adequately explains his reasons for finding Rice's statements about her symptoms not fully credible. I must therefore affirm the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United

14

States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

    Enter: July 28, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge